# BILLOW *v.* THE WESTERN MARINE AND FIRE INSURANCE COMPANY.

No indemnity can be given to the plaintiff, in an action on a policy of insurance on a steamer, for a general average loss, without evidence of the value of the cargo and freight.
Wages and provisions of the crew cannot form part of a claim for particular average.

APPEAL by the defendants from a judgment of the District Court of the First District, *Buchanan* J., rendered in favor of the plaintiff for $309 57, with interest from judicial demand.

The judgment of the court was pronounced by

SLIDELL, J.   The plaintiff is the assignee of the claim of one Ridgely, who obtained from the defendants a policy for $3,000, on one eighth of the steamer Alton, her body, engine, tackle, &c., said one eighth valued at $4,000; the entire boat, her body, engine, tackle, &c., being valued at $32,000.   The insurance was for one year, the boat to navigate the Mississippi river and its tributaries.   The premium was $300.   By the memorandum it is agreed, "that the steamboat is warranted by the assured free from average under fifteen per cent, unless general; and when a simple average loss shall be on account of repairs, or the loss of apparel and furniture (anchors excepted), the assurers shall be answerable for only two-thirds of the expenses of reparation, or replacing the property lost, the other third being considered as the general difference of value between new and old materials."

It appears principally from the admissions contained in the briefs of counsel, for the evidence is very meagre, that the steamboat Alton, on her voyage from New Orleans to St. Louis, when near Cape Girardeau, was injured by striking a snag, or some other object beneath the surface of the water, which made it necessary to put back to Cape Girardeau, and take out her cargo.   She then proceeded to St. Louis for repairs, which being completed, she returned to Cape Girardeau, took in her cargo, and returned to St. Louis, her place of destination.   It is also alleged by plaintiff, though of this there is no proof, that "there were no means of repairing the boat at Cape Girardeau; that when the boat arrived at St. Louis, it was some days before she could go into dock; that during the time, the boat still leaking, and the danger from the ice very imminent, it was deemed necessary, for the preservation of the boat, that the captain and crew should be kept on board, the engine being generally at work both day and night; that after being repaired, and ready to return to Cape Girardeau to take in her cargo, and complete her voyage, the ice was so very thick that it was some days before she could proceed, during which time the captain and crew were kept on board to preserve the vessel, and to be ready at the first favorable moment to proceed.   After the ice was sufficiently removed, she did proceed to Cape Girardeau."   See plaintiff's brief.

An account of charges, originally relied on, presented a total amount of $6,608 23.   But a revised bill was subsequently presented, which both plaintiff and defendant agree that we shall consider as the subject of the controversy, and which we now proceed to examine.

This bill, exhibiting a total of $5,015 24, which is stated as "gross amount of loss on the whole boat," exhibits the following items:

Amount of dry dock bill, ............................................$926 22

Amount of bills allowed, and subject to reduction of one
    third, ................................................$1,253 02

Deduct one third, new for old, ........................   417 67        835 55
                                                                    _____
                                                                    $1,761 77

The residue of the bill is composed of two items, to wit:
    " Wages account and board from Cape Girardeau to St.
    Louis to repair"................................   $919 94
    "Wages account at St. Louis and boarding, while repair-
    ing."   The items are then given, being for captain, mate,
    carpenter, five men, engineers, board, wood, coal and
    labor, and blankets, ............................   2,333 53      3,253 47
                                                                    _____
        Total, ..........................................$5,015 24

# APRIL, 1846. 59

Now, on the plaintiffs own showing, it is evident that a large portion of these charges, if recoverable at all, could only be recovered on the ground of general average. But the plaintiff has given us no means of ascertaining the proportion of the boat in a general average contribution, for we have no evidence of the value of cargo and freight. Without these data, it is impossible to give the plaintiff any indemnity on the score of a general average loss; and hence the judgment of the court below, which is based solely on the footing of general average, is erroneous.

BILLOW
*v.*
WESTERN MA-
RINE AND FIRE
INSURANCE
COMPANY.

The claim then of the plaintiff, as the case has been presented to us by the evidence, must rest entirely upon such rights as the plaintiff can establish for a particular average. It is well settled that wages and provisions of the crew cannot enter into a claim for particular average. Some of the decisions go so far as to say, that wages are so chargeable, when the crew is proved to have assisted in executing the repairs. But this would not aid the plaintiff, for he has not proved such employment. It is unnecessary, therefore, for us to inquire which of the two conflicting doctrines is the more just and reasonable. See 11 Johnson, 315. 1 Conn. 239. 5 Hammond, 306. 6 Ib. 73. We must, therefore, begin by deducting from the total amount of charges, being $5,015 24, the sum of $3,253 47. This leaves an amount of $1,761 77. As the whole value of the boat was $32,000, of which $4,000, or the eighth, was the valuation in the policy of the interest of the assured, the result exhibits a loss of much less than fifteen per cent. The amount of loss to come up to fifteen per cent, should have been, on the most liberal calculation for defendants, $450; whereas it is only $220 22. This loss, therefore, under the policy, is not recoverable from the defendants. It is to be observed that in this calculation we have not considered whether the one third should be deducted from the dry dock charges of $926 22, it not being necessary to do so. Nor is it necessary to consider whether the per centage should be calculated on $3,000 or on $4,000, as in either case the loss would be under fifteen per cent. Nor would it make any difference as to the result, if the items loosely charged for wood, coal and labor, were considered as not to be excluded, being only a sum of $436 89, the one eighth of which would only increase the above amount of average loss to $274 83.

It is, therefore, adjudged and decreed, that there be judgment for the defendants, and that the plaintiff pay the costs in both courts.

*G. B.*, and *L. C. Duncan*, for the plaintiff. *Maybin*, for the appellants.